Holcombe *vs.* Austell *et al.*

No. 123.—DISKIN HOLCOMBE, plaintiff in error, *vs.* ALFRED AUSTELL and others, defendants.

[1.] Possession cannot give title under the Statute of Limitations, if the possession is not continuous and adverse.

Ejectment, in Fayette Superior Court.    Tried before Judge BULL, March Term, 1855.

This was an action of ejectment brought in 1850, by Alfred Austell and others, against Diskin Holcombe.    The plaintiffs showed the grant from the State to John Arlines' orphans, dated November 24th, 1823; deed from James Arlines to Jer. Walker, February 2d, 1829; deed from Ann Davis to Diskin Holcombe, 23d October, 1837; *fi. fa.* Elias Bell *vs.* Diskin Holcombe and another, and levy on the lot,

and sale, and deed by the Sheriff to William McBride, November 7th, 1843; deed from William McBride and Alfred McBride to the plaintiffs, 16th November, 1849.

It was shown that Holcombe, the defendant, lived on an adjoining lot, and had a still-house on this lot, where he stilled peaches in the season, from 1837 to 1846, when he moved away, and in December, 1849, he moved on to this lot, where he built a house, and has lived there ever since; that before 1849 he had no clearing or improvement on No. 52, (the lot in dispute,) except the erection for the still.

Plaintiff proved that John Arlines had nine children, three of whom were minor orphans, and drew the lot, to-wit: Jethro, Mary and Martha; that Mary and Martha died unmarried, and that the surviving children are Henry, Jesse, James, Jethro and Sarah, now Mrs. Glass, besides their mother, Phereby, now Mrs. Williams.

The plaintiffs then introduced a note made by Holcombe to William McBride, for rent for this lot, (No. 52,) and another, dated October 1st, 1844.

Plaintiffs having closed, defendants introduced deeds of quit claim of their interest in said lot, from Jesse and Jethro Arlines, and from James Glass, who married Sarah, and from Mrs. Williams, to Isaac Holcombe, dated in 1853.

Defendant proved by the former Sheriff, that when he made the levy on the lot on Bell's *fi. fa.* he entered the levy as No. 53; that on the day of sale, he was told that the No. was 52, and he declined to sell it; that no other levy was made, but the entry was altered, and the land was re-advertised and sold; that William McBride, on the day of sale, told him (the Sheriff) that he was buying the lot for Holcombe, and hoped no one would bid against him.

Holcombe was in town, but witness is not certain that he was present at the sale, but thinks he was.

ABNER COKER, a Constable, testified: That in July, 1850, Andrew McBride gave him a *fi. fa.* against Holcombe, and directed him to levy on this lot as Holcombe's property.

Plaintiff, in rebuttal, introduced the answers of JETHRO

ARLINES, who testified : That in 1853, a man who, he heard, was named Holcombe, who said that his father owned this lot, and that he wanted the title strengthened, and asked for a quit claim deed from him ; that he, "having *no interest or claim whatever to said land,* gave him a quit claim deed, and his brothers and mother did the same.

To the words " he having no interest or claim whatever to said land," in these answers, defendant objected, on the ground that the witness was estopped by his deed from denying an interest.

This objection was over-ruled by the Court, and this is alleged as error.

The Jury having found for the plaintiffs, defendants moved a new trial, on the ground that the verdict was contrary to law and to the evidence, and because the Court admitted the portion of Jethro Arlines' testimony, objected to as above stated.

The new trial was refused by the Court, and this decision is alleged as error.

EZZARD & COLLIER, for plaintiff in error.

STONE, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] Was the verdict contrary to the evidence ? It was, unless the plaintiff showed title in himself. Did he show title in himself?

The plaintiff attempted, in two ways, to show title in himself: by a chain of conveyances down to himself from the drawers, and by the Statute of Limitations.

In respect to the first way, he succeeded in showing a grant from the State to John Arlines' orphans, and a deed from James Arlines to Jer. Walker, but he failed to show any deed from Walker to any person, or any other deed from an Arlines or the heir of an Arlines, to any person. He

showed a deed from Ann Davis to Diskin Holcombe, but he left a chasm between Ann Davis and Walker—between Ann Davis and the Arlines.

The plaintiff failed, then, to show title in himself, in the first way, by a chain of conveyances from the drawer down to himself.

Did he show title in himself by the Statute of Limitations?

This question may be resolved into this: was the possession or possessions of Diskin Holcombe such as perfected title in McBride and those claiming under him, by virtue of the Statute of Limitations? For Holcombe was the only person who ever had any actual possession of the lot; and McBride bought it at Sheriff's sale as his property.

And the answer to this question must be no.

The *first* possession of Holcombe was not continuous; and such as it was, it was that of a trespasser—a mere squatter.

And the possession of a mere trespasser, is to be deemed to be a possession in subordination to the right of him who has the true title. (*Ang. Lim. Ch.* 31, §5.)

This possession, too, was confined to the mere spot where the still stood, or to the spot on which the still-house stood.

This first possession, then, of Diskin Holcombe, was not sufficient to clothe him with title under the Statute of Limitations; and therefore, was not sufficient to clothe those claiming under him with such title.

And as to his second possession, it does not appear that that was a possession which he held under any of the plaintiff's lessors; and if that appeared, it would do the plaintiff no good, as the possession was, in itself, of less duration than seven years; and there was no other sufficient possession with which it could be connected, to make up the seven years. Indeed, a chasm of three years intervened between it and the previous possession, such as that was of Diskin Holcombe.

All which being so, we think that the verdict was contrary to the evidence; and therefore, that the Court below should have granted the motion for a new trial.