THE CENTRAL RAILROAD & BANKING CO. *v.* ROBERTSON.

1. Where a railroad company builds and undertakes to keep in repair for the accommodation of the public a bridge over or approach to a private road crossing, this is such an invitation to the public to use the same as would render the company liable for injuries resulting from defects negligently permitted to exist or remain in the bridge or approach, even though it be not affirmatively shown that such crossing is one which the company is bound by statute to keep in safe order and condition. This case is distinguishable from *Cox* v. *Railroad,* 68 *Ga.* 446.

2. While the charge of the court as to "checking the train" may not have been entirely appropriate, yet as the case really turned upon the question whether or not the defendant had negligently permitted the crossing to become and remain unsafe for want of repairs, and the plaintiff's evidence affirmatively showed the existence of such negligence, and that the injury complained of resulted therefrom, while the evidence introduced for the defendant was merely negative as to these matters, the charge in question was harmless and affords no cause for a new trial.

February 27, 1895.

Action for damages. Before Judge BARTLETT. Houston superior court. April term, 1894.

STEED & WIMBERLY and JOHN R. COOPER, for plaintiff in error.

Simmons, Chief Justice.

Robertson sued the railroad company for damages which he alleged had been sustained by him from the running of its train of cars against his mules and wagon while they were stalled upon the track at a crossing kept up by the defendant, because a cross-tie placed in the crossing by the defendant was rotten and broken, etc. There was a verdict for the plaintiff for $75, and the defendant's motion for a new trial being overruled, it excepted.

It was contended on the part of the railroad company, that the crossing at which the injury occurred not being a public road or a private way established pursuant to law, the company was under no duty to keep it in repair, the only statutory requirement as to the keeping in repair of crossings by railroad companies being that contained in section 706 of the code, which provides that all railroad companies shall keep in good order, at their expense, the public roads or ways established by law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws. It appears from the evidence, that the bridge or crossing. at which the injury occurred was built and kept up by the railroad company, and according to the testimony of the defendant's "supervisor," who was the officer charged with the duty of looking after repairs of the track and crossings upon its line of road, "the crossing was put there to accommodate the settlement." In view of these facts, it does not matter whether the crossing was one which the defendant was required by statute to keep in repair or not. Where a railroad company builds a crossing over its road and undertakes to keep it in repair for the accommodation of the public, this is equivalent to an invitation to the public to use the same; and if a person using the crossing sustains

injury from defects negligently permitted to exist or remain in the crossing, the company will be liable in damages, independently of any statutory provision on the subject. The principle which governs in such cases has been stated thus: "When the owner or occupier of land, by invitation express or implied, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by the unsafe condition of the land or its approaches, and under such an express or implied invitation, he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." *Atlanta Cotton-Seed Oil Mills* v. *Coffey,* 80 *Ga.* 145. "The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used. The true distinction is this: A mere passive acquiescence by an owner or occupier in a certain use of his land by others, involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby." Sweeny *v.* Old Colony and Newport Railroad Company, 10 Allen (Mass.), 373. The rule here laid down has been applied in numerous cases against railroad companies, similar to the case now under consideration. See, among others, the following: Stewart *v.* Pennsylva-

nia Ry. Co. (Ind.), 14 Am. & Eng. R. R. Cases, 679, and cases cited in note; Murphy v. Boston & Albany R. R. Co., 133 Mass. 131; Missouri Pacific R. Co. v. Bridges (Tex.), 39 Am. & Eng. R. R. Cases, 604, and note; Retan v. Lake Shore & Michigan Southern R. Co. (Mich.), 55 Am. & Eng. R. R. Cases, 97, 100. As was said by the court in Stewart v. Pennsylvania Ry. Co., *supra*, "It would be no answer for the defendant to say, 'I was not bound to make the crossing in the first instance, nor was I bound, after having made it, forever after to keep it in repair; I could abandon it at any time.' For all this might be true, and yet so long as the defendant was continuing to hold out to the public an invitation to cross, it was virtually saying, 'this crossing is safe'; and it was its duty to use due care to make its representations good."

The present case is distinguishable from that of *Cox v. Railroad Co.*, 68 *Ga.* 446. That case was controlled by the statute of limitations, the court holding that the action was barred by the statute; and upon its merits it differs essentially from this case. Although the declaration in that case alleged that the crossing was in a dilapidated condition, and that the injury resulted from such condition, the proof failed to show dilapidation, and the only defect shown was that the bridge was narrower than the road at the crossing, which fact was well known to the plaintiff, for the railroad at that point passed through his own farm, and he had been using the bridge daily for months, sometimes as much as twenty times a day. The court held that the railroad company was not required by the statute to build and maintain the bridge, and was not liable for damages because it had constructed a bridge narrower than the law required.

2. While the charge of the court as to "checking the train" may not have been entirely appropriate, yet as the case really turned upon the question whether or not the

defendant had negligently permitted the crossing to become and remain unsafe for want of repairs, and the plaintiff's evidence affirmatively showed the existence of such negligence, and that the injury complained of resulted therefrom, while the evidence introduced by the defendant was merely negative as to these matters, the charge in question was harmless and affords no cause for a new trial.                    *Judgment affirmed.*